**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Yajaira Sullivan, individually on behalf of herself and all others similarly situated, | x : : : Case No. : |
| Plaintiff, | : |
| v. | : : |
| Johnson & Johnson Consumer Companies, Inc., | : **CLASS ACTION COMPLAINT** : : **JURY TRIAL DEMANDED** |
| Defendant. | : : : |
| | x |

Plaintiff, Yajaira Sullivan  (hereinafter "Plaintiff"), individually and on behalf of

all others similarly situated, by her attorneys, alleges the following upon information and belief,

except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of

Johnson & Johnson Consumer Companies, Inc. (hereinafter "Defendant") with respect to the

marketing and sale of Aveeno Stress Relief Moisturizing Lotion and Aveeno Stress Relief Body

Wash Products (hereinafter the "Products") throughout the State of New York and throughout

the country.

2.      Defendant represents that each Product has the ability to provide and does provide

"Stress Relief" and that it "Calms and Relaxes."  Defendant's claims, representations, and

warranties are false and misleading.

1

3.      Given Defendant's on-label reference to "clinical studies" and Defendant's on-label representations about "relaxing scents of lavender and essential chamomile and ylang ylang oils, which have calming benefits when used in a shower or bath," Defendant is representing that the Products' aroma has the ability to relieve stress.

4.      As set forth in greater detail below, every sound and reliable study has demonstrated that aromatherapy with lavender, chamomile, and ylang ylang are no better than a placebo at providing stress relief.  There are no studies demonstrating the ingredients in the Products, by themselves or in combination, can be used for aromatherapy to relieve stress as Defendant claims.

5.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products provide stress relief when purchasing the Products.  Absent these misrepresentations, Plaintiff and Class Members would not have purchased the Products.  Given that Plaintiff and Class Members paid for Products they would not otherwise have purchased and/or paid a premium for the Products based on Defendant's misrepresentations, Plaintiff and Class Members suffered an injury in the amount of the purchase price of the Products and/or premium paid.

6.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the consumer protection statutes of all 50 states.  Defendant breached and continues to breach its express and implied warranties regarding the Product.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff

2

brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

**The Aromatherapy Industry**

7.     Aromatherapy involves the use of essential oils from plants (flowers, herbs, or trees). Essential oils used in aromatherapy are typically extracted from various parts of plants by distillation. The highly concentrated oils may be inhaled directly or indirectly. Aromatherapy is purported to stimulate smell receptors in the nose, which then purportedly send messages through the nervous system to the limbic system — the part of the brain that controls emotions.

8.     The aromatherapy industry has experienced a boom over the past few years, driven by the growing therapeutic use of essential oils and increasing consumer preference for natural products.[1] The global aromatherapy market generated $1.2 billion in revenue in 2017.[2] Topical application, like creams and washes, is the preferred consumer mode of aromatherapy delivery and accounts for 41.9% of the global aromatherapy market.[3] The global market for aromatherapy rose to $3.8 billion in 2018 and is expected to increase to over $8 billion by 2026.[4] The United States represents the largest market for this rapidly expanding industry.[5]

---

[1] https://www.psmarketresearch.com/market-analysis/aromatherapy-market
[2] *Id.*
[3] *Id.*
[4] https://www.globenewswire.com/news-release/2018/06/19/1526449/0/en/Aromatherapy-Market-is-expected-to-Witness-Significant-Growth-of-US-8-058-8-million-by-2026-Future-Market-Insights.html
[5] https://www.reuters.com/brandfeatures/venture-capital/article?id=46232

9.      Conditions in the industry have created the perfect storm for unscrupulous manufacturers of moisturizers, lotions, and soaps, like Defendant, to take advantage of consumers.  Numerous companies, including Defendant, advertise products with particular scents as having the ability to relieve stress and reduce anxiety.  Companies drawn to the industry by increasingly attractive sales numbers are able to gain market share and increase their profits by misleading consumers about the quality and benefits of using their products.  However, there are few high-quality randomized, controlled trials examining the efficacy of aromatherapy for any purpose, let alone for providing stress relief.[6]  Defendant's deceptive acts and practices and false advertising exemplify this ongoing epidemic that has plagued and continues to plague consumers throughout the country.

10.      In an experimental setting, stress is measured by self-reporting, as well as by objective measures including the level of cortisol (a hormone associated with stress) in saliva, blood pressure, and heart rate. As set forth in more detail below, there is no reliable support, based on either self-reporting or these objective measures, for the claim that the ingredients in the Products provide the benefits promised by Defendant.  A pair of systematic reviews were published in 2012 which concluded that there were few, if any, reliable studies demonstrating any effect of aromatherapy, and the use of lavender in particular, on stress, mood, or physiological wellbeing.  In the seven years since those analyses, all reliable studies have continued to demonstrate that Defendant's claim that its Products relieve stress and provide calm and relaxation is false.

---

[6] http://ecp.acponline.org/julaug00/aromatherapy_editorial.htm

**Defendant's Claims Regarding the Calming and Relaxing Effects of the Products Are Deceptive and Misleading**

11.     Defendant manufactures, markets, and sells two "Stress Relief" Products:  the Aveeno Stress Relief Moisturizing Lotion and the Aveeno Stress Relief Body Wash Products.

12.     The labeling and packaging for both Products represent that each Product: "calms and relaxes" and provides "stress relief."

13.     Labeling and packaging for the Products are depicted below:

5









14.    Defendant makes these claims despite no scientifically sound studies demonstrating that the Products relieve stress.  In fact, credible, scientifically sound studies of aromatherapy have shown that scents such as lavender do not relieve stress.  For example:

a.    In 2012, Maturitas published a meta-review of other systematic reviews of the effects of aromatherapy.[7]  The review was the most comprehensive evaluation of the efficacy of aromatherapy at that time.  After eliminating studies that did not meet minimum quality criteria, the authors analyzed ten systematic reviews, including three reviews which analyzed the effects of aromatherapy on anxiety. While those studies provide some indicia that aromatherapy could help reduce anxiety, they suffered from critical methodological weaknesses, including small sample sizes and lack of an adequate control group.  Based on these flaws, the authors ultimately concluded that "the evidence is not sufficiently convincing that aromatherapy is an effective therapy for any condition."[8]

b.    Many studies of the effects of aromatherapy on stress and mood have focused on the purported ability of lavender to reduce anxiety and tension.  Numerous studies have concluded that lavender has no ability to reduce stress or promote a calm and relaxed mood.  For example, in 2007, Psychoneuroendocrinology published a randomized controlled study which examined the psychological effects of lavender scent on participants who were exposed to a stressor.[9]  The study found that participants who were exposed to the lavender scent did not report better moods than participants who were exposed to a water vapor placebo.  Nor did the participants exposed to lavender demonstrate reduced cortisol (a hormone associated with stress levels).

c.    A 2012 systematic review of randomized clinical trials confirmed that the research available at that time did not support the effectiveness of lavender aromatherapy in promoting relaxation or relieving stress.[10]  The analysis evaluated 15 studies, which included a total of 1,565 participants who had been administered lavender in a variety of ways (inhalation, topical application of essential oil, bathing in lavender, oral capsules).  Approximately half of the

---

[7] Soo Lee, Myeong, et al, *Aromatherapy for health care: An overview of systematic reviews*, Maturis, 71 (2012) 257-260.

[8] *Id.*

[9] Kiecol-Glaser, Janine K., et al., *Olfactory influences on mood and autonomic, endocrine and immune function*, Psychoneuroendocrinology, (2008) 33, 328-339.

[10] Perry, R. terry, R, Watson, L.K., and Ernst, E., *Is lavender an anxiolytic drug? A systematic review of randomized clinical trials*, Phytomedicine, 19 (2012) 825-835.

reviewed studies found no significant effect of lavender on mood when compared to a placebo.  While half of the studies purported to show some effect of lavender on stress levels, each of these studies had methodological flaws that rendered their findings scientifically unreliable, including lack of randomization, different baseline levels of anxiety among participants, and failure to blind appropriately. Ultimately, the review concluded that "[t]he use of more widely used forms of lavender administration (aromatherapy, inhalation, massage, etc.) is not currently supported by good evidence of efficacy."

d.      Since the 2012 systematic review, researchers have continued to find that lavender has no impact on mood and stress levels.  For example, in 2014, Complementary Therapies in Medicine published the results of a randomized controlled trial conducted on sixty coronary artery bypass patients.[11]  The participants inhaled two drops of a two percent lavender essential oil solution, while the control group inhaled two drops of distilled water as a placebo.  The study found that inhalation aromatherapy with lavender had no significant effect on self-reported stress levels when compared to a placebo.

e.      In 2015, Evidence-Based Complementary and Alternative Medicine published a study which subjected 81 participants to a battery of emotional, physical, and psychological stressors, while exposing participants to a drop of lavender essential oil aroma.[12]  The study found that the lavender aromatherapy did not have any significant impact on self-reported stress levels or on cortisol levels.

f.      Finally, in 2016 the Cochrane database published a systematic review of studies concerning the efficacy of lavender aromatherapy massage in patients with cancer and concluded that there was insufficient evidence to suggest that aromatherapy massage provides any benefit.  The Cochrane database is regarded as the best single source of information on the safety and efficacy of health interventions. The review examined 19 previous studies, which included a total of 1,274 participants. Six studies compared aromatherapy massage with no massage.  The review concluded that "[t]here was some indication of benefit in the aromatherapy-massage group but this benefit is unlikely to translate into clinical benefit."   Other studies analyzed by the review compared massage with aromatherapy and massage without aromatherapy.  The review concluded: "From

---

[11] Seifi, Zahra, et al., *The effect of lavender essential oil on anxiety levels in patients ndergoing coronary artery bypass graft surgery: A double-blinded randomized clinical trial*, Iran J Nurs Midwifery Res. 2014 Nov-Dec; 19(6):574-580.

[12] Chamnine, I and Oken, B.S., *Expectancy of Stress-Reducing Aromatherapy Effect and Performance on a Stress-Sensitive Cognitive Task*, Evidence-Based Complementary and Alternative Medicine, Vol. 2015.

the limited evidence available, we were unable to assess the effect of adding aromatherapy to massage"[13]

15.    While there are studies which suggest that lavender may have some effect on mood and stress levels, each of those studies suffer from significant methodological problems that render their results unreliable, including failure to randomize or blind the experiment, inclusion of participants of varying baseline anxiety levels, use of unpleasant smells as placebos, and inclusion of participants who admitted to already believing in the efficacy of aromatherapy.

16.    Moreover, even absent these methodological flaws, any studies that purport to demonstrate a link between reduced stress and lavender, chamomile, and/or ylang ylang cannot, in any event, support Defendant's claims about the particular Products at issue.

17.    First, these studies generally use pure oils.  In stark contrast, the Products here are an amalgam of ingredients, including chemical "fragrance" apparently designed to approximate the scents of lavender, chamomile, and ylang ylang.  The Products also contain a litany of other ingredients.  The stress relief body wash includes water, glycerin, cocomidopropyl betaine, sodium laureth sulfate, avena sativa (oat) kernel flour, hydroxypropyltrimonium hydrolyzed wheat protein, hydroxypropyltrimonium hydrolyzed wheat starch, guar hydroxypropyltrimonium chloride, tetrasodiium EDTA, glycol distearate, polyquatermium-10, quatermium-15, and myristyl alcohol.  The stress relief moisturizing lotion includes water, glycerin, distearyldimonium chloride, petrolatum, isopropyl palmitate, cetyl alcohol, dimethicone, benzyl alcohol, and sodium chloride.  There are no studies demonstrating that these ingredients, by

[13] Shin, ES., et al. *Massage with or without aromatherapy for symptom relief in people with cancer.* Cochrane Database of Systematic Reviews 2016, Issue 6. Art. No.: CD009873.

themselves or in combination, can be used for aromatherapy to relieve stress as Defendant claims.

18.     Second, while many aromatherapy studies have administered lavender through inhalation (using an oxygen mask, glass jar, or pad taped to the upper lip), the Products, on the other hand, are applied topically to the skin.

19.     Third, many of the studies involved patients suffering from a particular medical condition (e.g. dementia) or from a particular kind of stress (e.g. pre-operative stress), rendering their results inapplicable to the population at large.

20.     Reliable aromatherapy studies demonstrate that scents will not reduce stress. Accordingly, all reasonable experts in the field agree that Defendant's representations that each Product "calms and relaxes" and has the ability to provide "stress relief" are false and/or misleading.

21.     Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

22.     Consumers rely on label representations and information in making purchasing decisions.

13

23.    By marketing the Products as having the ability to relieve stress and promote relaxation and calm and by placing those representations in a prominent location on the labels of the Products throughout the Class Period, Defendant has exhibited its awareness that those claims are material to consumers.

24.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

25.    Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

26.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

27.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as having the ability to reduce stress over comparable products not so labeled.

28.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

a.    Paid a sum of money for Products that were not what Defendant represented;

b.    Paid a premium price for Products that were not what Defendant represented;

14

     c.      Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

     d.      Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

29.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

30.     Plaintiff and the Class Members paid for Products that relieve stress.  The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

31.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

32.     Plaintiff and Class Members read and relied on Defendant's representations about the benefits of using the Products, and purchased Defendant's Products based thereon.  Had Plaintiff and Class Members known the truth about the Products, i.e., that they do not relieve stress, they would not have been willing to purchase them at any price and/or would have paid less for them.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28

U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members;

(2) Plaintiff is a citizen of the State of New York, and Defendant is a citizen of the State of New

Jersey; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and

costs.

34.     This Court has personal jurisdiction over Defendant because Defendant conducts

and transacts business in the State of New York, contracts to supply goods within the State of

New York, and supplies goods within the State of New York.

35.     Venue is proper because Plaintiff and many Class Members reside in the Eastern

District of New York, and throughout the State of New York.  A substantial part of the events or

omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

36.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen

of the State of New York and a resident of Brooklyn, New York.  During the Class Period

Plaintiff purchased the Products online and/or from a retail store in Brooklyn, New York.  Prior

to purchasing the Products, Plaintiff read the Products' labeling.  The packaging of the Products

Plaintiff purchased contained the representations that they provide "stress relief" and that each

Product "calms and relaxes."  Plaintiff purchased the Products in reliance on Defendant's

representations that the Products relieve stress and promote calm and relaxation.  If Plaintiff had

16

known that these representations were false, she would not have been willing to purchase the

Products or pay a premium price for them.  If the Products actually relieved stress, as represented

on the Products' labels, Plaintiff would purchase the Products in the immediate future.

**Defendant**

37.    Defendant, Johnson & Johnson Consumer Companies, Inc. is a corporation

incorporated in New Jersey with its principal place of business in Skillman, New Jersey.

38.    Defendant manufactures, markets, advertise and distributes the Products

throughout the United States.  Defendant created and/or authorized the false, misleading and

deceptive advertisements, packaging and labeling for the Products.

## CLASS ALLEGATIONS

39.    Plaintiff brings this matter on behalf of herself and those similarly situated.  As

detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling

practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.

Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive

relief.

40.    The Class is defined as all consumers who purchased the Products anywhere in

the United States during the Class Period (the "Class").

41.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a

subclass of individuals who purchased the Products in the State of New York at any time during

the Class Period (the "New York Subclass").

42.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

43.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

44.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

45.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.      Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.      Whether Defendant's false and misleading statements concerning its Products was likely to deceive the public;

e.      Whether Plaintiff and the Class are entitled to injunctive relief;

f.      Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

46.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

47.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

48.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

49.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Products providing stress relief, calm, and relaxation.

50.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

51.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Product.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive

20

relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if they actually provided stress relief, calm, and relaxation.

52.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.      <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Products have been purchased by thousands of people throughout the United States;

b.      <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

  i.      Resolution of the issues presented in the 23(b)(3) class;

  ii.     Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

  iii.    Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products as providing stress relief, calm, and relaxation.

c.      <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

21

d.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

53.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of its Product.  Plaintiff would purchase the Products again if they actually provided stress relief, calm, and relaxation, as represented on the Products' labels.

**<u>FIRST CAUSE OF ACTION</u>**
**<u>VIOLATION OF NEW YORK GBL § 349</u>**
**(On Behalf of Plaintiff and New York Subclass Members)**

54.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

55.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

56.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

57.     There is no adequate remedy at law.

58.     Defendant misleadingly, inaccurately, and deceptively advertise and markets its Products to consumers.

59.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as providing stress relief, calm, and relaxation —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.  Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

60.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that—contrary to Defendant's representations—does not provide stress relief, calm, and relaxation.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

61.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

62.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

63.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

64.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

65.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

66.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

67.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products provide stress relief, calm, and relaxation.

68.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which—contrary to Defendant's representations—do not relieve stress, or provide calm or relaxation.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

69.     Defendant's advertising, packaging and product labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

70.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

71.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

72.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

73.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

74.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and

punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
**(On Behalf of Plaintiff and All Class Members)**

75.      Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

76.      Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

77.      Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.      **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.      **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.      **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.      **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et*

26

*seq.*, and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e.   **Colorado**:  Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m. **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n. **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq.*

o. **Kentucky:**  Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p. **Maine:**  Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q. **Maryland:**  Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r. **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s. **Michigan:**  Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t. **Minnesota:**  Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u. **Missouri:**  Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

28

v.    **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.    **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.    **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.    **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.    **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.    **North Carolina:**  Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq*.

bb.    **North Dakota:**  Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc.    **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd. **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee. **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff. **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg. **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll.     **Washington:**  Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq*.

mm.    **West Virginia:**  Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq*.

nn.     **Wisconsin:**  Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq*.

oo.     **Wyoming:**  Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101*, et seq*.

78.     Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products provide stress relief, calm, and relaxation.

79.     Contrary to Defendant's representations, the Products do not relieve stress or provide calm and relaxation.

80.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to purchase and pay a premium for the Products.

81.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

82.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

83.     As a result of Defendant's violations, Defendant has been unjustly enriched.

84.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including, but not limited to, treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

85.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products provide stress relief, calm, and relaxation.

87.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

88.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

89.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

90.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

91.     Defendant breached the express warranty because all reliable studies of lavender and aromatherapy have demonstrated that they do not provide stress relief, calm, or relaxation.

92.     Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

33

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.      O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.      13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.      Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.      Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313; and

xx.     Wyo. Stat. § 34.1-2-313.

93.     As a direct and proximate result of Defendant's breach of express warranty,

Plaintiff and Class Members were damaged in the amount of the price they paid for the Products,

in an amount to be proven at trial.

35

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

94.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 Class Members.

96.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

97.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

98.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

99.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

100.    Defendant represented in writing that the Products provide stress relief, calm, and relaxation.

101.    These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and

36

defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

102.    As alleged herein, Defendant breached the written warranty by selling consumers Products that do not provide stress relief, calm, and relaxation.

103.    The Products do not conform to Defendant's written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**(On Behalf of Plaintiff and All Class Members)**

104.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105.    Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed product.

106.    Under the Uniform Commercial Code's implied warranty of merchantability, Defendant warranted to Plaintiff and Class Members that the Products provide stress relief, calm, and relaxation.

107.    Defendant breached the implied warranty of merchantability in that Defendant's Products deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept Defendant's Products if they knew that all

reliable studies of lavender and aromatherapy have demonstrated that they do not provide stress relief, calm, or relaxation.

108.    Within a reasonable amount of time after Plaintiff discovered that the Products do not provide stress relief, calm, and relaxation, Plaintiff notified Defendant of such breach.

109.    The inability of Defendant's Products to meet the label description was wholly due to Defendant's fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to Defendant's manufacture and distribution of the Products to the public.

110.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for Defendant's Products, together with interest thereon from the date of purchase.

**SEVENTH CAUSE OF ACTION**
**COMMON LAW UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

111.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112.    Plaintiff, on behalf of herself and consumers nationwide, bring a common law claim for unjust enrichment.

113.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

114.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the

detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

115. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

116. Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

117. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d)   Awarding punitive damages;

(e)   Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f)   Granting such other and further relief as the Court may deem just and proper.

Dated:  May 13, 2019

**THE SULTZER LAW GROUP P.C.**

Joseph Lipari /s/

By: _____

Joseph Lipari, Esq.
14 Wall Street, 20th Floor
New York, NY 10005
Tel: (212) 618-1938
Fax: (888) 749-7747
liparij@thesultzerlawgroup.com